UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN J. MCCARTHY,

                  DECISION AND ORDER

         Plaintiff,

                  17-CV-6721L

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.
_____


  Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

  On January 12, 2015, plaintiff, then 59 years old, filed an application for a period of disability and disability insurance benefits, alleging an inability to work since September 25, 2014. (Administrative Transcript, Dkt. #8 at 13).[1] His application was initially denied. Plaintiff requested a hearing, which was held on October 17, 2016 via videoconference before Administrative Law Judge ("ALJ") Gregory M. Hamel. The ALJ issued a decision on January 12, 2017, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #8 at 13-31). That decision became the final decision of the Commissioner when the Appeals Council denied review on August 29, 2017. (Dkt. #8 at 1-3). Plaintiff now appeals from that decision. The plaintiff has moved for summary judgment pursuant to Fed. R. Civ. Proc. 56 (Dkt. #10), and

---

1 The Administrative Transcript portions cited herein are identified using the internal Bates-stamped pagination utilized by the parties.

the Commissioner has cross moved for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) (Dkt. #14). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for the calculation and payment of benefits.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records in careful detail, particularly those relating to his treatment for asthma, depressive disorder, generalized anxiety disorder, and obsessive-compulsive disorder, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: no exposure to "very high" concentrations of dust, fumes, gases, and other pulmonary irritants; ability to focus attention reliably only on very routine and repetitive tasks; unable to engage in tasks requiring more than occasional interactions with coworkers, or with the public (in-person or over-the-phone), and unable to perform tasks requiring a strong production pace element or quality. (Dkt. #8 at 18).

Based on this finding and the testimony of vocational expert Robert Malik, the ALJ concluded that plaintiff's RFC permits him to perform work existing in significant numbers in the national economy. Specifically, plaintiff can perform the positions of packager and order picker. (Dkt. #8 at 30).

Plaintiff argues that the ALJ failed to appropriately weigh the medical opinion evidence of record, and that the ALJ improperly substituted his opinion for that of competent medical sources. The Court agrees.

Plaintiff has an extensive history of mental illness beginning in the 1970s, when he was psychiatrically hospitalized five times. He has received regular mental health treatment ever since, most recently with psychiatrist Dr. Khalid Hubeishy. (Dkt. #8 at 322). Initially, the ALJ gave "little" weight to Dr. Hubeishy's November 16, 2015 opinion concerning plaintiff's mental RFC. Without any explicit application of the treating physician rule,[2] the ALJ rejected the bulk of the opinion as "overly restrictive." (Dkt. #8 at 26). Dr. Hubeishy, who has treated plaintiff every 4-6 weeks since July 2004 – over eleven years at the time his assessment was rendered – opined that plaintiff's depressive disorder, panic disorder and obsessive-compulsive disorder, even with treatment through regular therapy and medication, continued to cause plaintiff to have chronic anxiety and to engage in episodic depression and compulsive verbal and gestural behaviors. These included repeatedly saying "sorry" and "thank you," obsessively making the sign of the cross, checking and rechecking items (e.g., locks on doors), and rearranging objects to form straight lines. Dr. Hubeishy opined that due to plaintiff's chronic depression, social anxiety,

---

2 It has long been established that, "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see* 20 C.F.R. § 404.1527(d)(2). A recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, however, the prior version of the regulation applies.

distractibility, and obsessive checking rituals, plaintiff has "poor or no[]" ability (variously described as "marked deficiencies") with respect to dealing with normal work stress, maintaining socially appropriate behavior, working with or in close proximity to others, maintaining attention and concentration, completing a normal workday without excessive absences, performing work without unreasonable rest periods, or responding appropriately to changes in a routine work setting. Plaintiff's symptoms could also be expected to cause him to miss more than three days of work per month. (Dkt. #8 at 327-31).

The ALJ likewise assigned "partial" weight to the opinion of consultative psychologist Dr. Yu-Ying Lin – the only other opinion of record by a mental health source who examined plaintiff – noting simply that the "record does not support" Dr. Lin's more restrictive findings. (Dkt. #6 at 25). Notably, Dr. Lin's opinion was consistent with that of Dr. Hubeishy, and the limitations the ALJ declined to adopt from that opinion were substantially similar – to wit, moderate to marked limitations in the ability to maintain attention and concentration, learn new tasks, make appropriate decisions, relate adequately to others, and deal with stress. (Dkt. #8 at 324-25).

In rejecting these opinions as inconsistent with the evidence of record, the ALJ invoked plaintiff's thirty-three-year work history as a Community Living Instructor (checking on, and dispensing medication to patients in a residential facility) prior to his alleged disability onset date, as well as plaintiff's participation in community theater and church activities, and his treatment records from Dr. Hubeishy, which on some occasions reflected stability or even improvement in some of plaintiff's symptoms.

Initially, I find that to the extent the ALJ relied on plaintiff's prior work history as evidence of his abilities or limitations, that reliance was misplaced. Plaintiff testified at his hearing, and testimony and statements submitted by several of his coworkers confirmed, that plaintiff's prior

4

employment occurred in a highly supportive environment in which significant accommodations were made for his symptoms. Tasks that took coworkers 5-10 minutes to complete routinely took plaintiff more than an hour, due to his obsessive need to check and re-check his work. (Dkt. #8 at 45-57). Plaintiff was scheduled for nighttime shifts to minimize his contact with supervisors, and was allowed to come in to work early to read the communication logs because his inability to focus required him to read and re-read items multiple times before he could process them. (Dkt. #8 at 285). Coworkers had to constantly prompt plaintiff to perform tasks, assist him to complete them, and "cover for" his mistakes. One colleague, Michael Padilla, described his ongoing efforts to reassure and assist plaintiff as "exhaust[ing]", and attributed plaintiff's ability to maintain his job for the final three years of his employment to the extra help that he (Padilla) had provided. (Dkt. #8 at 278). The record indicates that over time, plaintiff's employer's business expanded, and new employees were hired who were less understanding of plaintiff's idiosyncrasies. This, in turn, exacerbated plaintiff's anxiety, compromised his ability to work, and caused him to periodically retreat from coworkers to engage in ritualistic gestures or positive self-reinforcement. (Dkt. #8 at 80-84, 270, 278, 285). Dr. Hubeishy reported that plaintiff ultimately went on medical leave and later resigned from his position "due to being quite stressed out with his job," a decision Dr. Hubeishy supported. (Dkt. #8 at 333).

In short, given the significant accommodations plaintiff was provided in his prior work, the ALJ's reliance on plaintiff's past employment as evidence that plaintiff's limitations in attention, concentration, social difficulties, etc. were not "marked," or were not otherwise as severe as Dr. Hubeishy and Dr. Lin had indicated, was misplaced. *See e.g.*, SSR 11-2p §II(D)(1)(e) ("[w]hen we determine whether a person can do other work . . . we do not consider whether he or she could do so with accommodations").

5

Similarly, plaintiff's ability to participate in community theater – an activity which plaintiff testified was therapeutic for him and which a friend testified was "the only social outlet that [plaintiff] has (other than family and Church)" – does not significantly undermine Dr. Hubeishy's or Dr. Lin's opinions or furnish "good reasons" for the ALJ to have rejected them. (Dkt. #8 at 287). While plaintiff's activities of daily living were unquestionably relevant to the ALJ's analysis, the ALJ's focus on plaintiff's participation in a theater group in various capacities – to the exclusion of the medical opinion evidence by treating and examining physicians, and of those treatment records that suggested greater limitations than the ALJ found – was improper. A "claimant need not be an invalid" to be found disabled under the Social Security Act, and an ALJ may not "afford inordinate weight to a single factor" in making his RFC determination. *Balsamo v. Chater*, 142 F.2d 75, 81 (2d Cir. 1998). The fact that a claimant "gamely chooses to endure [symptoms] in order to pursue important goals, such as attending church" or engaging in other activities beneficial to the claimant's well-being, should not be construed against them unless it "truly show[s] that [the claimant] is capable of working." *Id*. (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)). Moreover, as with plaintiff's employment as a Community Living Instructor, his successful participation in community theater depended on colleagues and friends who accommodated his symptoms by providing him with additional input and support, and who were tolerant of plaintiff's obsessive speech and behavior patterns. (Dkt. #8 at 287).

The ALJ similarly focused on plaintiff's periodic reports of improvement or relative stability of his symptoms, while ignoring treatment records that reflected periods of decline. Longitudinal treatment records testify to intermittent complaints of worsening anxiousness and depression, suicidal thoughts, guilt related to religious issues, sleep disturbances, and increased ritualistic behaviors, including making the sign of the cross repeatedly, counting and numbering

items based on numbers in the Bible, and obsessively checking locks, doors, stove burners, and the alignment of objects on surfaces. Indeed, viewed as a whole, plaintiff's treatment records support Dr. Hubeishy's opinion that plaintiff's fluctuating symptoms would cause episodic deterioration, and would cause plaintiff to miss more than three days of work per month. (Dkt. #8 at 288-312, 329, 344-54).

Because the ALJ rejected the opinions of plaintiff's treating psychiatrist and consulting psychologist, without due application of the treating physician rule to the former, and without providing sufficient reasons for the rejection of either, there remained no medical opinion evidence of record by any treating or examining physician upon which the ALJ could rely with respect to plaintiff's mental RFC. (The ALJ instead opted to rely on the opinion of a reviewing physician who had never examined the plaintiff, and who had access only to a partial record which did not include Dr. Hubeishy's RFC assessment, or the testimonial statements from plaintiff's coworkers, family members and friends.) As such, I find that the ALJ improperly substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion," and that his determination is not supported by substantial evidence. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). *See also Hilsdorf v. Commissioner*, 724 F. Supp. 3d 330 (E.D.N.Y. 2010).

In summary, Dr. Hubeishy's opinion is consistent with, and supported by, the evidence of record, and it is clear that if it is afforded the controlling weight due to it as the opinion of a longstanding treating physician in the appropriate area of specialty, there is no work that plaintiff can perform. As the vocational expert indicated at plaintiff's hearing, plaintiff's absenteeism alone (estimated by Dr. Hubeishy to be more than 3 days per month) would disqualify him from even unskilled work. (Dkt. #8 at 93-94). Remand for the calculation and payment of benefits is therefore warranted.

7

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and that the record persuasively establishes plaintiff's disability. The plaintiff's motion for judgment on the pleadings (Dkt. #9) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is denied, and this matter is remanded for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 8, 2019.